IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ORBIE THERESA BUFFI,<br><br>    Plaintiff,<br><br><br><br>vs.<br><br><br><br>SINCLAIR OIL COMPANY, SNOW BASIN RESORT COMPANY a.k.a. SNOWBASIN A SUN VALLEY RESORT, and RANDY NEITZEL,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT RANDY NEITZEL'S MOTION TO DISMISS AND GRANTING DEFENDANT SINCLAIR OIL'S MOTION TO DISMISS<br><br><br><br><br><br>Case No. 2:12-CV-92 TS |

This matter is before the Court on Motions to Dismiss filed by Defendant Randy Neitzel and Defendant Sinclair Oil Company. For the reasons set forth more fully below, the Court will deny Neitzel's Motion and grant Sinclair's Motion.

I.  BACKGROUND

The following facts are taken from Plaintiff's Complaint and are accepted as true for purposes of these Motions.

1

From 2004 to 2008, Plaintiff Orbie Buffi worked at Snowbasin Resort Company in the human resources department. Plaintiff was supervised by Defendant Randy Neitzel.

During her employment, Plaintiff had several traumatic experiences. In 2006, Plaintiff divorced her husband of twenty-six years. A few months later, Plaintiff's mother was diagnosed with terminal brain cancer. In 2007, Plaintiff's father died. These events caused Plaintiff to develop depression and anxiety, for which she was prescribed antidepressant, anxiety, and sleep medications. Plaintiff thereafter had difficulty waking up in the morning, and began to arrive at work ten to twenty minutes late each day. In a discussion with Neitzel about her tardiness, Neitzel suggested that she start coming in at noon so that she had time to coordinate care for her mother or "go to the gym." Plaintiff accepted and began to come in around noon. Plaintiff's tardiness was always reflected on the manual time cards that she was required to keep. At one point in 2007, Plaintiff was given a written warning based on her tardiness.

Snowbasin thereafter switched to an automated time card system. In 2008, Neitzel scheduled a meeting with Plaintiff. During the meeting, Neitzel showed Plaintiff the written warning she had received in 2007 and asked if she had taken steps to correct the problem. Plaintiff was surprised that Neitzel was asking about a warning given long ago, and that Neitzel did not seem to acknowledge the discussions he had with Plaintiff about her tardiness in the past. Citing the amount of times Plaintiff had been late to work as evidenced by the automated time card system, Neitzel informed Plaintiff that she was terminated. At the time she was fired, Plaintiff was over forty years old.

Plaintiff contends that Neitzel knew about her tardiness long before the automated time card system was put in place because Neitzel was required to sign her manual time cards. Furthermore, Plaintiff emphasizes that Neitzel granted her permission to arrive late, which was never revoked. Plaintiff notes that other Snowbasin employees had received numerous verbal and written warnings for tardiness but had not been terminated. Plaintiff further notes that her position was immediately filled by her assistant, who is half Plaintiff's age and has less than half of Plaintiff's experience, and that no other applications were considered.

In addition to depression and anxiety, Plaintiff has been diagnosed with peripheral neuropathy in her feet. Neitzel was aware of this diagnosis and worked with Snowbasin's general manager to ensure that Plaintiff could park close to her work site and minimize time on her feet.

Plaintiff contends that Neitzel's reversal of his position on her tardiness, as well as the fact that she was replaced very quickly by a much younger candidate with only half her experience, demonstrates that she was fired for reasons other than arriving to work late. Plaintiff therefore alleges (1) age discrimination under the Age Discrimination in Employment Act ("ADEA"); (2) disability discrimination under the Americans with Disabilities Act ("ADA"); and (3) unlawful retaliation under the ADEA and ADA against all Defendants.

## II.  STANDARD OF REVIEW

Defendants contend under Rule 12(b)(1) that the Court lacks jurisdiction over Plaintiff's claims because Plaintiff failed to exhaust her administrative remedies. Whether a plaintiff has exhausted her administrative remedies is a purely jurisdictional question and a motion to dismiss

3

on those grounds should not be converted into a motion for summary judgment.[1]  Thus, the Court's consideration of an EEOC charge to determine whether a defendant in a civil case was named as a respondent therein will not convert the 12(b)(1) motion into a motion for summary judgment.  "'Because the jurisdiction of federal courts is limited, there is a presumption against [this Court's] jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.'"[2]

Defendants further contend that, even if the Court has jurisdiction, Plaintiff has failed to state a claim under Rule 12(b)(6) against Neitzel and Sinclair because neither were Plaintiff's "employer" under the ADA or ADEA.

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[3]  Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[4] which requires "more than an unadorned, the-defendant-unlawfully

---

[1]*Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1318 (10th Cir. 2005) ("[W]hile the district court correctly determined that Shikles was required to cooperate with the EEOC in order to exhaust his administrative remedies, and correctly determined that Shikles' exhaustion of administrative remedies was a jurisdictional prerequisite to his ADEA suit, the court erred in granting summary judgment to Sprint.  Rather, the district court should have dismissed Shikles' case based on a lack of subject matter jurisdiction.").

[2]*Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005) (quoting *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir.1999)).

[3] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

harmed-me accusation."[5]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[6]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[7]  As the Court in *Iqbal* stated, "only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief."[8]

### III.  DISCUSSION

The ADEA makes it unlawful for an employer to:

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [and]

---

[5] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[6] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[7] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[8] *Iqbal*, 129 S. Ct. at 1949-50 (alteration in original) (internal quotation marks and citations omitted).

> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.[9]

The ADA mandates that

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.[10]

A "covered entity" includes an employer.[11]

A. MR. NEITZEL

Defendant Neitzel contends that he is not a proper defendant in this suit because (1) Plaintiff has not exhausted her administrative remedies and (2) he was not Plaintiff's employer under the ADA or ADEA. The Court will address each argument in turn.

1. EXHAUSTION OF REMEDIES

"[A] plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under the ADEA."[12] The same is true for the ADA.[13] "The first step to exhaustion is the filing of a charge of discrimination with the EEOC."[14] Thus, courts generally impose a "strict requirement that each defendant must have been specifically named as the

---

[9] 29 U.S.C. § 623(a).

[10] 42 U.S.C. § 12112(a).

[11] *Id.* § 12111(2).

[12] *Shikles*, 426 F.3d at 1317.

[13] *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007).

[14] *Id.*

respondent in the EEOC charge."[15] However, the Tenth Circuit recognizes a narrow exception to this requirement in the Title VII context where (1) "the defendant was informally referred to in the body of the charge" or (2) "there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation."[16] To determine whether an exception should be granted, a court looks to

> (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.[17]

Defendant does not contest the application of this standard to ADA or ADEA claims.[18]

As to the first factor, Plaintiff clearly was able to ascertain the role of Mr. Neitzel in the alleged discrimination at the time her EEOC Complaint was filed. This factor therefore goes in favor of Neitzel.

---

[15] *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980).

[16] *Id.*

[17] *Id.* at 1312.

[18] *See Rodriguez v. Int'l Bhd. of Firemen & Oilers*, 1997 WL 327086 (D. Kan. May 30, 1997) (applying *Romero* to ADEA claim and noting that defendants had not argued that a different standard should apply).

As to the second factor, the Court finds that Mr. Neitzel's interests are similar to Snowbasin's with respect to the question presented here.  Because Neitzel is a Snowbasin employee accused of discrimination in his official capacity, Snowbasin's liability hinges on Neitzel's conduct, and the two parties rise or fall together.  Accordingly, Neitzel's interests are so similar to Snowbasin's that the failure to name Neitzel would not have affected the potential for resolution of Plaintiff's claims via voluntary conciliation.  This factor therefore goes in favor of Plaintiff.

As to the third factor, Neitzel has made no allegations suggesting that he was prejudiced by Plaintiff's failure to include him.  The Court finds it unlikely that Neitzel was unaware of the charge, since his actions were its centerpiece.  In responding to the charge, Snowbasin would have been required to consult with Neitzel to discover what occurred.  The Court therefore assumes that the failure to include Neitzel as a respondent did not result in an unfair lack of notice to Neitzel, and finds that this factor goes in favor of Plaintiff.

Finally, Plaintiff has not alleged that Neitzel represented to Plaintiff that his relationship with Plaintiff was to be through Snowbasin, and the fourth factor therefore goes in favor of Neitzel.

The Court is thus left with an even split.  However, the Court would note that "the purposes of exhaustion are: "(1) to give notice of the alleged violation to the charged party; and (2) to give the EEOC an opportunity to conciliate the claim."[19]  Because the claims against Snowbasin are based on the claims against Neitzel, so that the two are essentially inseparable,

---

[19] *Jones*, 502 F.3d at 1185.

Neitzel must have been apprised of the details of the charge and a conciliation with Snowbasin would have resolved the claims against Neitzel as Plaintiff's employer. The Court therefore finds that Plaintiff's failure to name Neitzel as a respondent does not frustrate the purposes of exhaustion. Accordingly, the Court will deny Neitzel's motion to dismiss for lack of personal jurisdiction.

Plaintiff has also argued that her intake questionnaire, which clearly sets out her contentions against Mr. Neitzel, constitutes a charge of discrimination in its own right under *Semsroth v. City of Wichita*.[20] Because the Court finds that Plaintiff can pursue claims against Neitzel under *Romero*, the Court will not consider this argument.

2. NEITZEL AS EMPLOYER

In his opening brief, Neitzel correctly stated that a plaintiff cannot sue persons in their individual capacity under the ADA or ADEA.[21] Plaintiff then clarified in her response that she brings claims against Neitzel as an employer and not in his individual capacity. In response, Neitzel argues he was not Plaintiff's employer because the Complaint indicates that other managers at Snowbasin were superior to Defendant in the corporate hierarchy and he therefore did not have "'ultimate authority' over Plaintiff's hiring, firing, and conditions of employment."[22]

---

[20] 304 F. App'x 707 (10th Cir. 2008).

[21] *See Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 744 (10th Cir. 1999) (finding that "the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition" and noting that the same rule is applied to the ADEA in the majority of federal circuit and district courts).

[22] Docket No. 22, at 3.

With exceptions not applicable here, the Tenth Circuit applies cases interpreting the term "employer" in Title VII to the ADA and ADEA.[23] Under Title VII, a "supervisory employee need not have ultimate authority to hire or fire to qualify as an employer, as long as he or she has significant input into such personnel decisions."[24]

The Complaint alleges that Neitzel participated in hiring and firing decisions. The Complaint also alleges that Neitzel granted Plaintiff permission to come in later in the day, indicating that he had some control over the conditions of Plaintiff's employment. Accordingly, the Court finds that Plaintiff has alleged sufficient facts to show that Neitzel was an employer.

Defendant's reply memoranda also seems to suggest that allowing a suit to go forward against Neitzel, which in the end only results in a suit against Snowbasin, is redundant where Snowbasin has already answered the Complaint. This Court faced and dismissed an identical argument in the Title VII context in *Wight v. Downing*,[25] and will therefore reject Defendant's contention here.

In light of the foregoing, the Court will not dismiss the claims against Neitzel.

---

[23]*See Butler*, 172 F.3d at 744 ("[W]e can discern no meaningful distinction between the definitions of 'employer' in Title VII and the ADA."); *Wheeler v. Hurdman*, 825 F.2d 257, 263 (10th Cir. 1987) (comparing ADEA to Title VII and stating that "cases construing definitions of one of the Acts are to be viewed as persuasive authority when interpreting the others").

[24]*Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir. 1989), *vacated in part on other grounds,* 900 F.2d 27 (4th Cir. 1990) (citing *Tafoya v. Adams*, 612 F. Supp. 1097, 1105 (D. Colo. 1985), *aff'd*, 816 F.2d 555 (10th Cir. 1987) (finding that a supervisor was an employer even though he only participated in rather than controlled decisions to hire and fire personnel)).

[25]2008 WL 303918, at *2 (D. Utah Jan. 31, 2008) ("Here, Plaintiff has brought her Complaint against both the supervisory employees and the employer directly. While Defendants argue that this is redundant, Plaintiff may bring her Title VII claim against individuals in their official capacity. Thus, Defendants' Motion will be denied on this ground.").

B.     SINCLAIR OIL

Like Neitzel, Sinclair argues (1) Plaintiff failed to exhaust her administrative remedies against Sinclair because Sinclair was not named in the charge of discrimination and (2) it was not Plaintiff's employer because Sinclair Oil is merely Snowbasin's parent corporation.

Plaintiff responds by conceding that Sinclair should be eliminated from the case caption because Sinclair has not yet been served, but contending that Sinclair should not be dismissed from the case because, in some circumstances, a parent company can be liable for the actions of its subsidiary.  The Court would first note that Plaintiff bears the burden of proving jurisdiction once challenged.  Because Plaintiff has not disputed that Sinclair was not named in the charge, she has failed to meet her burden.

Furthermore, even if the Court found it had jurisdiction over the claims against Sinclair, the Court would still be required to dismiss under Rule 12(b)(6) because Plaintiff alleges no facts showing that Sinclair was Plaintiff's employer under the ADA or ADEA.  The Court would note that if Plaintiff intended to argue that Sinclair should be liable as a parent company, the time to do so was when responding to Sinclair's motion to dismiss, and not at some future date.  Having failed to point the Court to any allegation against Sinclair that would support a finding that Sinclair could be liable as a parent corporation, Plaintiff's claim would require dismissal even if the Court found it had jurisdiction.

## IV. CONCLUSION

In light of the foregoing, it is therefore

ORDERED that Defendant Randy Neitzel's Motion to Dismiss for Lack of Jurisdiction (Docket No. 11) is DENIED. It is further

ORDERED that Defendant Sinclair Oil's Motion to Dismiss for Lack of Jurisdiction (Docket No. 9) is GRANTED. The hearing set in this matter for July 25, 2012, is STRICKEN.

DATED   July 13, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge